UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBRA S. BRINEGAR,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-228
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on October 5, 2005 and an application for SSI on March 20, 2009, alleging disability since June 20, 1993, due to anxiety, bipolar disorder, degenerative disc disease, and thyroid disease. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) George Gaffaney. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 7, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act only through June 30, 1993.

2. The [plaintiff] has not engaged in substantial gainful activity since June 30, 1993, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: Bipolar Disorder, Panic Disorder, and Left Knee Effusion (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The [plaintiff] has the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional lifting of twenty pounds and frequent lifting of ten pounds, standing six hours in an eight-hour workday and sitting six hours in an eight-hour workday; except that the [plaintiff] is limited to frequent, rather than constant, stair climbing, stooping, balancing, kneeling, crouching, crawling, and ladder climbing. She is also limited to simple, routine unskilled tasks with only occasional change in routine work setting, and only occasional interaction with the public. (footnotes omitted)

6. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1971 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[1]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 1993, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 21-29).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 60,000 unskilled, light jobs in the regional economy, citing as examples of such jobs a housekeeper, packer and food preparer. (Tr. 29, 71).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred by ignoring evidence from her treating psychiatrist; (2) the ALJ erred in assessing plaintiff's credibility; and (3) the ALJ's residual functional capacity (RFC) formulation fails to account for functional limitations resulting from plaintiff's non-severe impairments and her obesity. (Doc. 11).

1. <u>Whether the ALJ erred by failing address evidence from plaintiff's treating psychiatrist</u>.

For her first assignment of error, plaintiff argues that the ALJ erred because he failed to address evidence from her treating psychiatrist, Kode Murthy, M.D., or weigh Dr. Murthy's opinion as required by 20 C.F.R. §§ 404.1527, 416.927. Plaintiff further argues the ALJ violated the treating physician rule by giving significant weight to the opinions of the consultative examining psychologist, Dale Seifert, M.S.Ed., and the non-examining state agency reviewing psychologist, Marianne Collins, Ph.D., as these doctors did not have a treating

5

relationship with plaintiff. (Doc. 11 at 11-16). For the following reasons, the undersigned finds the ALJ erred by failing to consider the evidence from plaintiff's treating psychiatrist.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of

examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p). The clear procedural requirement of giving "good reasons" exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. *See also Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp. 2d 763, 782 (S.D. Ohio 2011).

The instant record includes treatment notes and a Social Security Administration form completed by Dr. Murthy, plaintiff's treating psychiatrist. *See* Tr. 482-83, 571-72, 742-44.

Dr. Murthy reported that plaintiff had a depressed mood and "flattish" affect and diagnosed her with moderate bipolar affective disorder. (Tr. 482-83). Dr. Murthy opined that plaintiff had poor concentration, poor tolerance frustration, poor ability to relate to coworkers or supervisors, and poor ability to tolerate stress. (*Id.*). Dr. Murthy further opined that plaintiff had moderate limitations in her daily activities and that her mental impairment moderately affected her interests, habits, and behavior. (Tr. 482). Dr. Murthy reported that plaintiff's symptoms had persisted for "several months" and had responded "fairly" to treatment. (Tr. 483).

The treatment notes reflect that Dr. Murthy has treated plaintiff from July 1, 2005 to at least May 2011. (Tr. 571, 743). Given this lengthy treatment relationship, there is no doubt that Dr. Murthy qualifies for treating physician designation. As such, pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ was required to weigh his opinion in accordance with the standards enunciated above. Despite this duty, the ALJ failed to weigh Dr. Murthy's opinion and did not discuss, or even acknowledge, the evidence from Dr. Murthy in his decision. Rather, the ALJ erroneously stated that "the record is devoid of any ongoing counseling [or] psychiatric treatment. . . ." *See* Tr. 26.

The Commissioner does not attempt to explain the ALJ's failure to discuss the evidence from Dr. Murthy but simply asserts "there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision." (Doc. 18 at 5). The Commissioner erroneously cites to *Walker v. Sec'y of H.H.S.*, 884 F.2d 241, 245 (6th Cir. 1989) to support the proposition that ALJs are not required to cite to evidence from plaintiff's treating psychiatrist. *Walker* stands only for the proposition that the Court may look at all of the record evidence in reviewing the ALJ's decision, regardless of whether the evidence was cited by the

Commissioner. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Contrary to the Commissioner's insinuation, *Walker* does *not* permit an ALJ to ignore treatment records or opinion evidence from a treating doctor.

In consideration of the fact that Dr. Murthy has been plaintiff's treating physician from 2005 to at least the time of the hearing (Tr. 571, 743), the ALJ's failure to weigh his opinion or discuss or even acknowledge the evidence from Dr. Murthy is reversible error. *See Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 546) ("*Wilson* requires reversal when a treating physician's opinion was ignored and no reasons for doing so were provided."). *See also Cole*, 661 F.3d at 939-40 (quoting *Blakley*, 581 F.3d at 407) ("The ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence'. . . ."). The ALJ's failure to consider this evidence is not harmless because Dr. Murthy's opinion indicates plaintiff's functional abilities are more limited than those assessed by Dr. Seifert, the consultative examiner upon whom the ALJ relied. Dr. Murthy opined that plaintiff has poor concentration, poor tolerance frustration, poor ability to relate to coworkers or supervisors, and poor ability to tolerate stress. (Tr. 482-83). In contrast, Dr. Seifert opined that plaintiff had mild limitations in her ability to relate to others and maintain attention and moderate limitations in her ability to withstand the stress of day-to-day work. *See* Tr. 489. The ALJ was obliged to resolve this conflicting opinion evidence in assessing plaintiff's mental RFC. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 373 (6th Cir. 2006) (citing *Richardson*, 402 U.S. at 399). The ALJ's failure to comply with his obligations to weigh the opinion of plaintiff's treating psychiatrist, give "good reasons" for such weight, and resolve the conflicts in the

evidence denotes a lack of substantial evidence for his decision denying plaintiff's disability applications.

For the above reasons, plaintiff's first assignment of error should be sustained and this matter should be reversed and remanded with instructions to the ALJ to address the evidence from Dr. Murthy consistent with the rules and regulations governing treating doctors' opinions. The ALJ should further be instructed to seek clarification from Dr. Murthy regarding his notes and opinion as necessary and to obtain an updated functional assessment opinion from Dr. Murthy.

2. <u>Whether the ALJ's credibility determination is substantially supported</u>.

For her second assignment of error, plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence because the ALJ gave undue weight to certain evidence. Specifically, plaintiff asserts the ALJ should have given greater weight to her May 2011 hearing testimony and less weight to her May 2009 statements to consultative examiner Dr. Seifert (Tr. 485-89) and April 2009 reports in a Function Report (Tr. 172-79) because her condition had deteriorated in the two years prior to the hearing. Plaintiff also argues the ALJ erred by relying on evidence from emergency room records to support his finding that her psychological condition was not as severe as she alleged because those sources were not treating plaintiff for her mental health impairments. (Doc. 11 at 17-21).

As discussed above, the ALJ's decision with regard to plaintiff's psychological impairments is not substantially supported because the ALJ failed to address the evidence from plaintiff's treating psychiatrist. As the ALJ's consideration of evidence from the treating psychiatrist on remand may impact the remainder of the ALJ's sequential evaluation, including

the assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.*, a remand for further proceedings and not an outright reversal for benefits.

3. <u>Whether the ALJ failed to consider the impact of plaintiff's impairments</u>.

In her final assignment of error, plaintiff asserts the ALJ erred by not appropriately considering the impact of her impairments in formulating her RFC. Plaintiff's argument is two-fold. Plaintiff first argues the ALJ erred by not finding her obesity, asthma, chronic obstructive pulmonary disease (COPD), thyroid disease, degenerative disc disease, osteoarthritis, or Tic Douloureux[2] to be severe impairments. Plaintiff then argues that the ALJ erred because he did not account for the impact of her non-severe impairments in assessing her functional capacity. The Court will first address plaintiff's severity argument.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Plaintiff is not required to establish total

---

[2]Tic Douloureux is characterized by "a severe stabbing pain to one side of the face." *See* http://www.emedicinehealth.com/tic_douloureux/article_em.htm (last visited May 13, 2014). The medical providers of record often refer the condition by its other name, trigeminal neuralgia. *See, e.g.*, Tr. 739.

11

disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

Here, the ALJ classified plaintiff's obesity, asthma, COPD, thyroid disease, degenerative disc disease, osteoarthritis, and Tic Douloureux as non-severe impairments. (Tr. 21). The ALJ acknowledged that plaintiff "makes diffuse allegations of pain and limitations" associated with these impairments, but found that these allegations were not credible given the medical evidence in the record. (Tr. 22). The ALJ found that there was no material evidence establishing that these impairments had more than a minimal effect on plaintiff's functional capacity and, consequently, they were non-severe for disability purposes. (*Id.*). The ALJ's determination is supported by substantial evidence.

With regard to plaintiff's asthma and COPD, the ALJ noted that April 2010 x-rays showed no acute cardiopulmonary process and a CT scan revealed clear lungs, no pulmonary embolus, and no aortic dissection. The ALJ also cited to evidence from multiple examinations showing that plaintiff's lungs and breath sounds were clear on multiple examinations, cardiovascular examinations were consistently regular with no murmurs, gallops, or clicks,

respiration was regular and unlabored, pulse was regular, and plaintiff did not report chest pain or shortness of breath. (Tr. 21, citing Tr. 367, 388, 400, 402, 414, 431, 445, 473, 479, 497, 503, 514, 516, 606, 621, 626, 629, 631, 636, 637, 664, 671-72, 675, 735-36, 812, 827, 847, 884).

To support his finding that plaintiff's thyroid disease was not a severe impairment, the ALJ explained that there was no evidence of a recent severe complaint or limiting symptoms. The ALJ also noted that while plaintiff underwent a procedure to remove mildly enlarged lymph nodes from her neck, other nodes were unchanged through the next year and a stable mild asymmetric enlargement of the thyroid gland was likely a goiter. (*Id.*, citing Tr. 581).

The ALJ assessed the severity of plaintiff's osteoarthritis and degenerative disc disease as follows:

> In regards to the osteoarthritis and degenerative disc disease of the lumbar spine and cervical spine, x-rays of the cervical spine showed mild cervical spondylosis, straightening of the normal cervical lordosis, no vertebral fracture, and no foraminal narrowing. Examinations revealed the [plaintiff]'s neck was supple and non-tender, without spasms and no lymphadenopathy or JVD. In addition, the neck had normal range of motion and no evidence of instability. The [plaintiff]'s back was non-tender and she had strength of 5/5 bilaterally of the upper and lower extremities. Sensation was grossly intact to light touch over upper and lower extremities. She had a normal gait, muscle strength, and was able to move all extremities. She had no extremity tenderness, joint pain, or swelling, and she had full range of motion in all extremities.

(Tr. 21-22, citing Tr. 387, 400-02, 431, 470-71, 473, 478-79, 496-97, 499, 508-09, 516-18, 605-06, 609-10, 629, 631, 638, 671, 673, 713, 737, 739, 752, 766-67, 782-83, 731, 827, 848, 884) (internal citations omitted).

The ALJ found that plaintiff's Tic Douloureux was not a severe impairment because plaintiff reported that the condition improved with medication and while she still had occasional

13

"twinges" of pain and eye-watering, she was unable to explain how these symptoms limited her functionally. (Tr. 22, citing Tr. 812, 957-58).

Plaintiff does not refute the evidence relied on by the ALJ nor does she cite to any evidence in the record demonstrating that her asthma, COPD, thyroid disease, degenerative disc disease, osteoarthritis, or Tic Douloureux cause any significant functional limitations. Plaintiff simply asserts that the ALJ's classification of her asthma and COPD as non-severe is "inexplicable" and "confusing" because the severity determination is a *de minimis* hurdle. *See* Doc. 11 at 19, 22. The Court disagrees. The ALJ supported his determination by citing to multiple examination findings showing that plaintiff did not experience symptoms or functional limitations due to any of these conditions. It is incumbent upon plaintiff at Step Two of the sequential analysis to put forth evidence demonstrating that her impairments are severe. *Rabbers*, 582 F.3d at 652. The evidence here simply does not show that plaintiff's asthma, COPD, thyroid disease, degenerative disc disease, osteoarthritis, and Tic Douloureux limited her functional abilities such that they would properly be categorized as severe impairments.

The ALJ declined to make a severity determination as to plaintiff's obesity. However, the ALJ acknowledged that with a height of 5'4" and weight of 190 pounds, plaintiff had a body mass index of 32.6 and was considered obese. The ALJ explained that there was insufficient medical support to find that plaintiff's obesity limited her ability to work; neither the treatment notes nor any diagnosis in the record discussed obesity-related functional limitations; and plaintiff did not testify or present any other evidence showing that her obesity impaired her ability to work. Rather, the only evidence in the record on plaintiff's obesity are physicians' notes stating that plaintiff was obese and should lose weight. (Tr. 22-23).

Plaintiff argues the ALJ rejected her "obvious struggles with obesity," citing to her hearing testimony that her "body's falling apart" and that she has difficulty walking because her left knee "gives out" on her and that standing causes back pain. (Doc. 11 at 22, citing Tr. 46, 50-51). Review of the testimony cited by plaintiff reveals that she did not attribute any of these allegations of pain to her obesity. *See, e.g.*, Tr. 46 (plaintiff's testimony that her body was "falling apart" was in connection to numbness in her arm, a broken collarbone, her lymph node condition, and osteoarthritis – not obesity). Indeed, plaintiff did not even mention her obesity or its effect on her functional limitations in her testimony. *See, generally,* Tr. 40-57. The only time plaintiff even discussed her weight was in relation to her recent weight loss, which was purportedly due to nausea rather than an attempt to lose weight due to obesity. *See* Tr. 45-46. Consequently, the Court finds that plaintiff's testimony does not establish that she experiences any functional limitations due to her obesity. As plaintiff has failed to identify any other evidence in the record, such as treatment notes or medical opinion evidence, showing that her obesity impacts her ability to work, the ALJ did not err in declining to classify it as a severe impairment.[3] The Court now turns to plaintiff's secondary argument.

Plaintiff contends the ALJ's RFC formulation is not substantially supported because he failed to consider the impact of the above impairments in assessing plaintiff's functional limitations. Plaintiff asserts that though the ALJ was required to consider the effects of

---

[3] To the extent plaintiff asserts the ALJ was required to classify plaintiff's obesity as either a severe or non-severe impairment, *see* Doc. 19 at 11, this assertion is incorrect. Plaintiff has put forth no evidence suggesting that her obesity affected her ability to work from which the ALJ could have deduced that her obesity was an impairment. It is plaintiff's duty to furnish evidence to the ALJ to permit him to make such conclusions and her failure to do so relieves the ALJ of his obligation to even address plaintiff's obesity. *See Cranfield v. Comm'r of Soc. Sec.*, 79 F. App's 852, 857-58 (6th Cir. 2003). Notwithstanding this, the ALJ here considered plaintiff's obesity and reasonably declined to classify it as an impairment given the absence of evidence establishing that it affected her ability to work. Given the evidence of record, the ALJ was required to do no more.

plaintiff's non-severe impairments in assessing her RFC, he clearly did not as "[t]he correct RFC would have left [her] with nothing less than an inability to engage i[n] Substantial Gainful Activity." (Doc. 11 at 23). The undersigned finds that the ALJ did not err by failing to consider plaintiffs impairments in combination or by failing to properly account for plaintiff's impairments in the RFC finding.

In assessing a claim for disability, the ALJ must analyze "the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1071 (6th Cir. 1992); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). *See also* 20 C.F.R. §§ 404.1545(e), 416.945(e). This does not mean the ALJ must employ a particular "combined effects" analysis. *See Loy v. Sec'y of H.H.S.*, 901 F.2d 1306, 1310 (6th Cir. 1990). "[A]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effects of the impairments in combination. . . ." *Id*. Instead, it is sufficient for the ALJ to refer to the claimant's "impairments" (plural) and "combination of impairments." *Id*.

Here, as stated above, the ALJ thoroughly discussed the relevant medical evidence and determined that the medical evidence did not establish that plaintiff's non-severe impairments or her obesity had any limiting effects on her functional abilities. The ALJ stated that he considered all of plaintiff's impairments individually and in combination in his decision. *See* Tr. 23. The ALJ's extensive discussion of plaintiff's impairments, severe and non-severe, support this assertion. Consequently, the Court finds that the ALJ properly considered plaintiff's multiple impairments in formulating the RFC.

Notably, plaintiff fails to cite to any evidence whatsoever establishing that she has any functional limitations due to her obesity or other non-severe impairments. Nor does plaintiff explain what the "correct RFC" formulation is. *See* Doc. 11 at 23. Plaintiff merely puts forth conclusory assertions that the ALJ erred in assessing her impairments without explaining what functional limitations the ALJ failed to accommodate or citing to evidence that establishes any such limitations. In the absence of such evidence, the undersigned finds that the ALJ properly considered the effects of plaintiff's physical impairments in assessing her functional limitations.[4]

For these reasons, the undersigned recommends that plaintiff's third assignment of error be overruled.

## IV. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings with instructions to the ALJ to address the evidence from Dr. Murthy consistent with the rules and regulations governing treating doctors' opinions. The ALJ should further be instructed to seek clarification from Dr. Murthy regarding his notes and opinion as necessary and to obtain an updated functional assessment opinion from Dr. Murthy; reformulate plaintiff's RFC; and obtain new VE testimony as necessary.

---

[4]The ALJ's RFC regarding plaintiff's mental impairments is not substantially supported because, as explained above, the ALJ failed to address evidence from plaintiff's treating psychiatrist.

17

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 5/22/14

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBRA S. BRINEGAR,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-228
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).